E-FILED
Wednesday, 30 May, 2012  12:31:54 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| HSBC BANK USA, NA, *as Trustee for the registered holders of ACE Securities Corp. Home Equity Loan Trust, Series 2005-HE2, Asset Backed Pass-Through Certificates*, <br><br>    Plaintiff, <br><br>        v. <br><br> MACK THOMAS, MARY M. THOMAS, BENEFICIAL ILLINOIS, INC. *d/b/a Beneficial Mortgage Co.*, MCLEAN COUNTY TREASURER, SECURITY FINANCE CORPORATION OF ILLINOIS, INC., <br><br>    Defendants. | Case No. 11-cv-1170 |

## O R D E R  &  O P I N I O N

This matter is before the Court on Plaintiff's Motion for Summary Judgment. (Doc. 22). Defendants' Responses were due January 30, 2012, and none have been filed. For the reasons stated below, the Motion is granted.

### LEGAL STANDARD

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Typically, all inferences drawn from the facts must be construed in favor of the non-movant, but the court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694,

699 (7th Cir. 2009). However, where the non-moving party has failed to respond to the Motion for Summary Judgment, "we depart from our usual posture of construing all facts in favor of the non-moving party; rather, we accept as true all material facts contained in" the moving party's statement of undisputed material facts. *Johnson v. Gudmundsson*, 35 F.3d 1104, 1108 (7th Cir. 1994) (*citing Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 333 (7th Cir. 1993); *Martin v. Consultants and Administrators, Inc.*, 966 F.2d 1078, 1084 (7th Cir. 1992)). "Even if the opposing party completely fails to respond to a summary judgment motion,…the court still must ascertain that judgment is proper 'as a matter of governing law.'" *Id.* at 1112.

## BACKGROUND

On December 31, 2004, Liberty Mortgage Funding ("Liberty") lent the Thomases approximately $101,500.00. The Thomases executed a note in favor of Liberty in exchange for this money, and agreed to pay 7.625% in interest at a yearly rate; to pay taxes, insurance, and any other escrow items that may apply; and to make monthly payments of $715.93 on the first day of every month. Mortgage Electronic Registration System ("MERS"), as nominee for Liberty, secured its interests in the Note by filing a Mortgage with the McLean County Recorder on January 21, 2005, covering the property described as:

> LOT 2 OF THE SUBDIVISION OF PART OF LOT 13 OF ASSESSOR`S SUBDIVISION OF LOT 14 IN THE SOUTH 12 OF SECTION 5, TOWNSHIP 23 NORTH, RANGE 2 EAST OF THE THIRD PRINCIPAL MERIDIAN, AS SHOWN BY PLAT RECORDED IN BOOK 13 OF PLATS ON PAGE 22, IN MCLEAN COUNTY, ILLINOIS.
> Being the same property conveyed to Mack Thomas and Mary Marlene Thomas, husband and wife, by deed dated 01/31/97 and recorded 02/05/97, of record in Deed Book 97, Page 2838, of record in the Office of the Clerk of McLean County, IL.

The property is more commonly known as: 124 Magoun St., Bloomington, IL 61701.

On March 29, 2005, MERS, as Nominee for Liberty, assigned its Mortgage to Plaintiff, which is a national association chartered in the State of Virginia, and having its principal place of business or headquarters in the State of Virginia, in this case. Plaintiff then received all of Liberty's interests in the Property pursuant to the Mortgage and Note.

In October 2010, the Thomases failed to pay the monthly installments of principal, interest, taxes, insurance, and any other escrow items applied, and have failed to make such payment from October 1, 2010 through the present. Ocwen Loan Servicing, as servicer for HSBC, sent a Notice of Default and a Grace Period Notice to the Thomases at the mailing address they had provided. There remains an outstanding principal balance of $98,127.66 as of June 22, 2011, with interest accruing on the unpaid principal balance at $15.26 per day, plus attorney's fees, foreclosure costs, late charges, advances, and expenses incurred by the Plaintiff as a result of the default.

Defendants filed this action for foreclosure on April 29, 2011. (Doc. 1). The Thomases, represented by counsel, filed a Motion to Dismiss on July 5, 2011, which the Court denied on August 1, 2011.[1] (Docs. 12 & 14). On January 6, 2012, the

---

[1] The Thomases asserted that Plaintiff had failed to comply with 735 ILCS 5/2-606 and the terms of the Promissory Note and Mortgage by failing to serve, and attach to the Complaint, a written notice of acceleration and default as conditions precedent to filing a foreclosure suit. (Doc. 12 at 1-4). They further claimed that Plaintiff failed to comply with 735 ILCS 5/2 - 606 regarding the notice required by 735 ILCS 5/15 - 1502.5 by failing to provide, and attach to the Complaint, the "Grace Period Notice" prior to filing its Complaint for foreclosure. (Doc. 12 at 4-5). Defendants argued that Plaintiff's failure to attach these notices to the Complaint

Court granted Plaintiff's Motion for Entry of Default against Defendants Beneficial, Security Finance, and the McLean County Treasurer.[2] (2/7/2012 Text Order). As all the Defendants have failed to file a Response to the Motion for Summary Judgment, it is now ready for disposition.

## DISCUSSION

As Plaintiff points out, the suit is based on a contract, the interpretation of which is an issue of law to which summary judgment is well-suited if the terms are clear and unambiguous.[3] *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 379-80 (7th

---

doomed the claim. The Court rejected this argument, finding that Plaintiff was not required to attach these documents to the Complaint in order to proceed with the suit, though Plaintiff was required to send the notices to the Thomases. (Doc. 14 at 8). As noted above, Ocwen, as servicer for Plaintiff, sent the Notice of Default and Grace Period Notice to the Thomases in November 2010.

[2]   An entry of default precedes the entry of default judgment. *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004) ("There are two stages in a default proceeding: the establishment of the default, and the actual entry of a default judgment. Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks."); *see also* FED. R. CIV. P. 55(a)-(b). The instant Order will complete the process of default judgment for the defaulted Defendants, as Plaintiff has put on sufficient evidence for the Court to determine its entitlement to relief.

[3]   Plaintiff does not explicitly discuss choice of law (though it cites to cases applying Illinois law), but the Court notes that the contract's choice of law provision states that the contract is "governed by federal law and the law of the jurisdiction in which the Property is located," which is Illinois. (Ex. 2 at 10). The parties are before the Court pursuant to its diversity jurisdiction; federal courts sitting in diversity apply state law to contract disputes and employ the forum state's choice-of-law principles. *United States Textiles, Inc. v. Anheuser–Busch Cos.*, 911 F.2d 1261, 1269 (7th Cir.1990) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1943)). Illinois courts routinely enforce contractual choice-of-law provision in disputes such as this one, where the Mortgage contains a governing law provision. *See Belleville Toyota v. Toyota Motor Sales, U.S.A.*, 770 N.E.2d 177, 194 (Ill.2002) ("Generally, choice of law provisions will be honored."). As no party argues for the application of another state's law, the Court will apply Illinois law as contemplated by the Mortgage.

Cir. 2009) (citing *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009); *Tingstol Co. v. Rainbow Sales Inc.*, 218 F.3d 770, 771 (7th Cir. 2000); *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007)). Here, the Mortgage provides that Liberty is entitled to the repayment of the debt evidenced by the Note, along with interest, payment of "all other sums, with interest," and the Thomases' performance of their covenants and agreements under the Mortgage and Note. (Ex. 2 at 3). The Note shows that the Thomases promised to repay Liberty for the loan of $101,500 under the terms described above. (Ex. 1). Liberty, through MERS, assigned the Mortgage to Plaintiff, and so Plaintiff became entitled to repayment of the debt as well as the other rights secured by the Mortgage. (Ex. 3).

Plaintiff has put on evidence that the Thomases are in default on their Note and Mortgage, and that they owed, as of June 12, 2011, a total of $103,981.05, which includes taxes, insurance, late charges, unpaid interest, and expenses and costs of collection. (Ex. 6 at 2). Interest on their debt accrues at a rate of $15.26/day after June 22, 2011. (Ex. 6 at 2). In addition to establishing Plaintiff's entitlement to repayment of the debt, the Mortgage also provides that, if the Thomases breach the agreement and Plaintiff properly notifies them of this, Plaintiff "may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding." (Ex. 2 at 11). It also states that Plaintiff may recover its "expenses incurred in pursuing [these remedies], including, but not limited to, reasonable attorney's fees and costs of title evidence." (Ex. 2 at 11-12).

The Thomases have breached their agreement under the Note and Mortgage, and are in default. Plaintiff therefore has exercised its right to require payment of the debt, as well as to recover its expenses and attorneys' fees. There is no dispute as to the evidence or the legal conclusions to be drawn therefrom, and so the Court finds that Plaintiff is entitled to summary judgment and an order of foreclosure.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 22) is GRANTED. A judgment of foreclosure will follow entry of this Order. CASE TERMINATED.

Entered this 30th day of May, 2012.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
